**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**KASAAD DORSEY,**

        **Plaintiff,**

    v.                                                      **6:14-CV-23**

**DETECTIVE JOHN REGAN,**
**Badge# D204-2322; and**
**DETECTIVE RUECKER,**
**Badge# D123-2257,**

        **Defendants.**
_____

**THOMAS J. McAVOY,**
**Senior United States District Judge**

## DECISION & ORDER

**I.    INTRODUCTION**

Plaintiff Kasaad Dorsey brought this action *pro se* pursuant to 42 U.S.C. § 1983. He asserts that on October 1, 2013, he was beaten and falsely arrested/imprisoned by defendants Detective John Regan and Detective Ruecker. Compl. at 2–3. The Court previously dismissed plaintiff's claims of false arrest/imprisonment as barred by *Heck v. Humphrey*, 512 U.S. 477, 486–87 (1994), *see* 4/2/14 Dec. & Ord., dkt. # 11, and denied his motion to amend the complaint. *See* 4/14/15 Ord., dkt. # 53. Presently before the Court are cross-motions for summary judgment. *See* Plt. Mot., dkt. # 56; Defs. Mot. dkt. # 57. For the reasons that follow, plaintiff's motion is denied and defendants' motion is granted in part and denied in part.

1

## II.    STANDARD OF REVIEW

On a motion for summary judgment the Court must construe the properly disputed facts in the light most favorable to the non-moving party, *see Scott v. Harris*, 127 S. Ct. 1769, 1776 (2007), and may grant summary judgment only where "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see O'Hara v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 642 F.3d 110, 116 (2d Cir. 2011).  When considering cross-motions for summary judgment, the Court "must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *Hotel Employees & Rest. Employees Union, Local 100 of N.Y. v. City of N.Y. Dep't of Parks & Recreation,* 311 F.3d 534, 543 (2d Cir. 2002)(citation omitted).   "[N]either side is barred from asserting that there are issues of fact, sufficient to prevent the entry of judgment, as a matter of law, against it . . . [and] a district court is not required to grant judgment as a matter of law for one side or the other." *Heublein, Inc. v. United States,* 996 F.2d 1455, 1461 (2d Cir. 1993).

## III.    PROCEDURAL HISTORY

Plaintiff's verified complaint dated December 18, 2013 was filed in the Southern District of New York and transferred to this Court on December 26, 2013.  Dkt. #s 2-4.  In the complaint, plaintiff asserts that on October 1, 2013 at approximately 9:00 p.m. he was in a Home Depot parking lot in Albany, New York, purchasing marijuana from a seller. Compl. at 3.  When Dorsey completed the transaction, two black trucks approached, at which point Dorsey and the seller began to run. *Id.*  Dorsey states that while running, defendants tased

2

him with a stun gun and hit him with an unmarked truck, causing him to fall to the ground. *Id.* He asserts that while on the ground and handcuffed, defendant Regan repeatedly punched him in the face. *Id.* Plaintiff suffered multiple injuries consisting of a swollen face, two black eyes, the removal of a taser prong, a chipped tooth, cuts to the inner lips, forehead, and right cheek bone, and lower back pain. *Id.* Dorsey was arrested for Criminal Sale of a Controlled Substance, Third Degree, and later indicted for Assault, Second Degree. *Id.*

In the "Relief" section of the complaint, plaintiff demands:

Would like the court to charge defendants with attempt [*sic*] vehicular manslaughter, assault with a deadly weapon, and criminal assault. Request order pertection [*sic*] on Albany Police Department C.R.U. staff. I would like to sue Albany Police Department, and City of Albany County [*sic*]. Dismissal of charge against me of assault second-degree. However Detective John Regan sustained his injuries by causing my injuries.

*Id.*

Upon initial review of the *pro se* complaint, the Hon. Christian F. Hummel, United States Magistrate Judge, granted plaintiff's application to proceed *in forma pauperis*; found plaintiff's excessive force allegations against defendants Detective John Regan and Detective Ruecker sufficient to state plausible claims under the Fourth Amendment; and recommended dismissal of plaintiff's false arrest and false imprisonment claims as barred by *Heck v. Humphrey*, 512 U.S. 477, 486–87 (1994). *See* 2/28/14 Rep. Rec., dkt. # 10. On April 2, 2014, the Court adopted Magistrate Judge Hummel's recommendation and dismissed plaintiff's claims for false arrest and false imprisonment. 4/2/14 Dec. & Ord., dkt. # 11.

On August 19, 2014, Magistrate Judge Hummel denied plaintiff's motions to strike

3

the defendants' answer and stay civil proceedings during an undefined criminal proceeding related to the October 1, 2013 charges. *See* 8/19/14 Order, dkt. # 31. On April 14, 2015, Magistrate Judge Hummel denied plaintiff's motion for leave to amend his complaint, and for a subpoena of camera footage and trial transcripts from plaintiff's state court criminal trial. *See* 4/14/15 Order, dkt. # 53. On April 21, 2015, plaintiff and defendants each filed motions for summary judgment. *See* dkt. #s 56 (Pl. Motion); 57 (Defs. Motion).

## IV. PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

In support of his motion for summary judgment, plaintiff submits a notice of motion, a statement of material facts, and an affidavit of service. Plaintiff makes vague legal arguments in both the notice of motion and statement of material facts. Defendants respond as if the arguments were presented in a memorandum of law, and the Court treats the arguments similarly.

### a. Plaintiff's Statement of Material Facts in Support of his Motion

In his moving Statement of Material Facts ("PMSMF"), plaintiff asserts that his arrest on October 1, 2013 for Criminal Sale of a Controlled Substance, Third Degree, was "unlawful." PMSMF ¶1. Defendants respond by: (1) noting that plaintiff's claims for false arrest and false imprisonment were dismissed, making the lawfulness of his arrest irrelevant; (2) citing plaintiff's complaint in which he admits to purchasing marijuana immediately before his arrest on October 1, 2013; (3) citing plaintiff's deposition testimony during which he admits that he was convicted upon his guilty plea of Criminal Possession of a Controlled Substance, Third Degree, arising out of the October 1, 2013 incident, and (4) citing plaintiff's deposition testimony during which he admitted he was convicted after a jury

4

trial of Assault, Second Degree, for assaulting Detective Regan on October 1, 2013. *See* Defendants' Responsive Statement of Material Facts ("DRSMF"), ¶¶ 1, 3 (and citations contained therein).

While defendants are correct that plaintiff may not challenge the lawfulness of his arrest because his false arrest/imprisonment claims were dismissed, the crime or crimes for which the police believed they had probable cause to arrest is relevant to the reasonableness inquiry on an excessive force claim. *See Graham v. Connor*, 490 U.S. 386, 394-95, 109 S. Ct. 1865, 104 L. Ed.2d 443 (1989);[1] *Tracy v. Freshwater*, 623 F.3d 90, 96 (2d Cir. 2010);[2] *Sterlin v. City of New York*, 2014 WL 2560595, at *4 (S.D.N.Y. June 06, 2014).[3] It is important to understand, however, that plaintiff's convictions for Criminal

---

[1] The Fourth Amendment prohibits the use of excessive force by a police officer "in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen." Graham v. Connor, 490 U.S. 386, 395, 109 S. Ct. 1865, 104 L. Ed.2d 443 (1989). The test for excessive force is one of reasonableness. Id. "Where, as here, the excessive force claim arises in the context of an arrest or investigatory stop of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment, which guarantees citizens the right 'to be secure in their persons ... against unreasonable ... seizures' of the person." Id. at 394. The Fourth Amendment standard is purely objective: "the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." Id. at 397. This standard "requires careful attention to the facts and circumstances of each particular case, *including the severity of the crime at issue*, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Id. at 396 (emphasis added). Because the standard is objective reasonableness, "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers violates the Fourth Amendment." Id. at 396 (quoting Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir.1973)).

[2] ("[T]he inquiry is necessarily case and fact specific and requires balancing the nature and quality of the intrusion on the plaintiffs Fourth Amendment interests against the countervailing governmental interests at stake.")(citation omitted).

[3] The Southern District wrote in Sterling:

The Fourth Amendment [ ] protects the right to be free from an officer's use of unreasonable (excessive) force during the course of an arrest. Tracy v. Freshwater, 623 F.3d 90, 96 (2d Cir. 2010) (citing Graham v. Connor, 490 U.S. 386, 395, 109 S. Ct. 1865, 104 L. Ed.2d 443 (1989)). Like the test for probable cause, the Fourth Amendment reasonableness test is an objective one. Id. (quoting Bryant v. City of New York, 404 F.3d 128, 136 (2d Cir. 2005)). The Court disregards the arresting officer's subjective intent and instead considers "whether, in light of the totality of the circumstances
(continued...)

Possession of a Controlled Substance, Third Degree, arising out of the October 1, 2013 incident, and Assault, Second Degree, for assaulting Detective Regan on October 1, 2013, establish probable cause as a matter of law. *See McLaurin v. New Rochelle Police Officers*, 439 Fed. Appx. 38, 39 (2d Cir. 2011);[4] *see also Devenpeck v. Alford*, 543 U.S. 146, 153, 125 S.Ct. 588, 160 L. Ed.2d 537 (2004);[5] *Jaegly v. Couch*, 439 F.3d 149, 154 (2d Cir. 2006).[6] Thus, the existence of probable cause to arrest plaintiff on October 1, 2013, and therefore the "lawfulness" of his arrest, will not be litigated before the jury. Rather, the issues to be litigated will be whether the defendants used constitutionally prohibited excessive force, or failed to intervene to stop another officer's use of constitutionally

---

[3](...continued)
faced by the arresting officer, the amount of force used was objectively reasonable at the time." Amnesty Am. v. Town of W. Hartford, 361 F.3d 113, 123 (2d Cir. 2004) (citing Graham, 490 U.S. at 397). The objective reasonableness of any use of force depends on the balance between governmental interests justifying the force and the individual's interest in his liberty and bodily integrity. See [Tolan v. Cotton, ——U.S. ——, 134 S. Ct. 1861, —— L. Ed.2d ——, 2014 WL 1757856, *4 (May 5, 2014) (*per curiam*)] (quoting Tennessee v. Garner, 471 U.S. 1, 8, 105 S. Ct. 1694, 85 L. Ed.2d 1 (1985)). *Courts must consider, at a minimum, the nature and severity of the crime leading to the arrest*, whether the suspect posed an immediate threat to the safety of another person, and whether the suspect was resisting arrest or attempting to flee. Tracy, 623 F.3d at 96. Because police officers often decide how much force to use in "split-second judgments-in circumstances that are tense, uncertain, and rapidly evolving-" courts must evaluate the record "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Id. (quoting Jones v. Parmley, 465 F.3d 46, 61 (2d Cir. 2006)).

2014 WL 2560595, at *4 (emphasis added).

[4]("[T]he district court properly granted summary judgment in favor of the Appellees with respect to the § 1983 false arrest claims, on the ground that Appellant's conviction established probable cause for the arrest as a matter of law.")(citing *Cameron v. Fogarty*, 806 F.2d 380, 388–89 (2d Cir.1986))

[5](Rejecting the view that probable cause to arrest must be predicated upon the offense invoked by the arresting officer, or even upon an offense "closely related" to the offense invoked by the arresting officer, and stating that the "subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause.").

[6]("Following *Devenpeck*, we conclude here that a claim for false arrest turns only on whether probable cause existed to arrest a defendant, and that it is not relevant whether probable cause existed with respect to each individual charge, or, indeed, any charge actually invoked by the arresting officer at the time of arrest. Stated differently, when faced with a claim for false arrest, we focus on the validity of the *arrest*, and not on the validity of each charge.")(emphasis in original).

6

prohibited excessive force, under the circumstances as they existed at the time.

Defendants do not dispute plaintiff's contention that he suffered injuries on October 1, 2013 as alleged in the complaint and as set forth in the medical records from the Albany Medical Center Emergency Room, including a nasal fracture. However, whether those injuries were the result of defendants' use of constitutionally prohibited excessive force (or the failure to intervene) must be determined by a jury.

Plaintiff contends that he was "assaulted on the ground by the defendants before and after the plaintiff was in handcuffs. Officer that was present at the incident did not prevent another officer from violating plaintiff's right." PMSMF ¶ 3. Defendants deny this, contending that Detective Regan used only such force as was necessary to effectuate plaintiff's arrest, who was fighting back and resisting arrest. DRSMF, ¶ 3 (and citations contained therein). Defendants further cite record support for the propositions that Detective Gavigan, an unnamed third party, deployed the Taser that struck plaintiff; that Detective Plante, also an unnamed third party, was the officer who drove a police vehicle that was positioned in plaintiff's path of travel and into which plaintiff ran as he was looking back at the other detectives giving chase; that plaintiff conceded at his deposition that Detective Ruecker never came into physical contact with plaintiff's body in any manner on October 1, 2013; and plaintiff admitted at his deposition that he was convicted after a jury trial of the charge of Assault, Second Degree, for assaulting Detective Regan on October 1, 2013. *Id.*

Even though plaintiff was convicted of Assault, Second Degree, for assaulting Detective Regan on October 1, 2013, there is still a genuine question of material fact as to whether the defendants used excessive force on this date, or whether a defendant failed to

7

intervene to stop the use of excessive force by another officer. Those issues must be decided by a jury.[7]

Finally, plaintiff contends that his prosecution for Assault, Second Degree, for assaulting Detective Regan on October 1, 2013 was "frivolous" and "in retaliation to justify [*sic*] this civil action." PMSMF ¶ 4. Defendants deny this statement, noting that plaintiff's false arrest and false imprisonment claims have been dismissed, and that plaintiff admitted at his deposition that he was convicted by a jury of the charge of Assault, Second Degree, arising from his conduct on October 1, 2013. DRSMF, ¶ 4 (and citations contained therein).

For reasons discussed above, plaintiff's conviction of Assault, Second Degree, for assaulting Detective Regan on October 1, 2013 establishes probable cause for that charge and negates any claim of frivolity in instituting his prosecution. Further, the Fourth Amendment inquiry is purely objective: "the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham*, 490 U.S. at 397. Whether the charge was brought as a means of retaliation is irrelevant to the Fourth Amendment inquiry and, therefore, will not be litigated before the jury.

### b. **Plaintiff's Notice of Motion**

Plaintiff asserts in his notice of motion that he "demands" $250,000 in punitive damages from each defendant individually, and $1,500,000 from the Albany Police Department for "in adequate training" and "[f]ailure for officers to prevent another officer from violating the plaintiff's constitutional right." Pl. Notice of Motion, dkt. # 56.

---

[7]Detective Ruecker's liability, and the defendants' liability for Detective Plante and Detective Gavigan's actions, are addressed in relation to defendants' motion, *infra*.

### 1. **Punitive Damages**

Defendants ask the Court to preclude plaintiff from seeking punitive damages because: (1) he did not request monetary damages in the complaint (or in the proposed amendment that was denied by Magistrate Judge Hummel); (2) the demand for punitive damages is made for the first time after closure of discovery, thereby prejudicing defendants; and (3) "[p]laintiff has failed to offer even a shred of evidence giving rise to a reasonable inference that the conduct of either defendant in this action dictates an award of punitive damages." Def. Mem. L. p. 1. The motion in this regard is denied.

Despite that plaintiff does not specifically request monetary damages in the complaint, a liberal reading of this *pro se* pleading indicates that he seeks such damages. *See Sealed Plaintiff v. Sealed Defendant #1*, 537 F.3d 185, 191–92 (2d Cir. 2008).[8] In the "relief" section of the Complaint, plaintiff indicates that he "would like to sue Albany Police Department, and City of Albany County [*sic*]." The phrase "to sue" typically and colloquially means a civil action to recover monetary damages. While the phrase is directed at the City of Albany and its police department, the Complaint must be read as a whole and interpreted to raise the strongest argument that it suggests. *See McPherson v. Coombe,* 174 F.3d 276, 280 (2d Cir.1999).[9] Doing so suggests that plaintiff brought this action against Defendants Regan and Ruecker, both Albany Police Department detectives, seeking, *inter alia*, monetary damages.

Moreover, plaintiff's proposed Civil Case Management Plan, dkt. # 13, indicates that

---

[8]("On occasions too numerous to count, we have reminded district courts that 'when [a] plaintiff proceeds pro se, . . . a court is obliged to construe his pleadings liberally.'" (citations omitted))

[9](pleadings should be read liberally and interpreted to "raise the strongest arguments they suggest")(quoting *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994))

9

he seeks monetary damages in this case. Plaintiff indicates that he seeks damages for "medical bills, pain & suffering, property that was taken, defamation of character." *Id.* ¶11. Further, in the portion of the proposed Case Management Plan asking "How can settlement efforts be assisted?", plaintiff wrote: "With a reasonable payment, medical bills, pain & suffering, lost wages, and property seized." *Id.* ¶ 16. These contentions are sufficient to put defendants on notice that plaintiff seeks monetary recovery in this case.

Defendants are not prejudiced by plaintiff's failure to specifically request punitive damages while discovery was ongoing. If punitive damages are ultimately awarded, the amount of such damages will be determined by the nature of the conduct in issue, *see Picciano v. McLoughlin*, 723 F. Supp.2d 491, 506 (N.D.N.Y. 2010),[10] and the net worth of each individual defendant found liable for such damages. *See Vasbinder v. Ambach*, 926 F.2d 1333, 1344 (2d Cir.1991);[11] *see also City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981).[12] It is presumed that discovery was conducted relative to the nature of the alleged conduct, and evidence relative to the each individual defendant's net worth is already in their possession.

Nonetheless, because there is a genuine question of material fact whether plaintiff would be entitled to punitive damages even if he prevails on his excessive force claims,[13]

---

[10]("Punitive damages may be awarded when the plaintiff has shown that defendant's conduct was motivated by evil motive or intent, or when it involves callous indifference to federally protected rights of others.")(interior quotation marks and citations omitted)

[11]("Punitive damages are to be tailored to the defendant's ability to pay, and normally that class of evidence is not admitted or desirable during the liability and compensatory damages phase of the case.")

[12](punitive damages are not available against a municipality in a § 1983 action)

[13] If the jury accepts plaintiff's version of events indicating that he was beaten before and after he was handcuffed, it is possible that the jury could award punitive damages. However, it is also possible that the
(continued...)

10

the motion for a judgment that plaintiff is entitled to punitive damages if he prevails is denied. *See e.g. Picciano*, 723 F. Supp.2d at 506.[14]

### 2. Albany Police Department as Defendant

Plaintiff's notice of motion demands $1,500,000 from the Albany Police Department for "in adequate training" and "[f]ailure for officers to prevent another officer from violating the plaintiff's constitutional right." Pl. Notice of Motion, dkt. # 56. Defendants respond that this is the first time that plaintiff demanded a judgment against the Albany Police Department, and argue that the "Albany Police Department is not a named defendant in this lawsuit, and as such, plaintiffs request must be dismissed as a matter of law." Def. Mem. L. p. 2.

There is no indication that the City of Albany was served with a summons or complaint in this matter, thus personal jurisdiction has not been obtained over this entity. Further, despite that plaintiff moved to amend his complaint to add two individual Albany Police officers,[15] he did not move to amend to name the City of Albany as a defendant or to have a summons and the complaint served on the City. Because discovery has closed and the case is trial ready, plaintiff's demand for a judgment imposing liability on, or amending the complaint to assert claims against, the City of Albany is denied as untimely and prejudicial to the City of Albany. Inasmuch as personal jurisdiction has not been obtained

---

[13](...continued)
jury could find that the defendants' conduct violated the Fourth Amendment but does not warrant an award of punitive damages.

[14]("Where the plaintiff has provided sufficient evidence to overcome summary judgment with respect to excessive force, the Court cannot state as a matter of law that the [plaintiff] is not entitled to punitive damages.") (internal quotation marks and citation omitted)

[15]That motion was denied by Magistrate Judge Hummel as untimely.

11

over the City of Albany, plaintiff's motion for summary judgment in this regard is denied. Any claim against the City of Albany is dismissed without prejudice to being brought in a separate action.

## V.     DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### a.  Defendants' Statement of Material Facts in Support of their Motion

The following facts are relevant to defendants' motion for summary judgment. Unless indicated otherwise, these facts are deemed established for purposes of this motion.

A drug transaction was purportedly arranged between a police confidential informant and plaintiff.  *See* Def. Moving Statement of Material Facts ("DMSMF"), ¶¶ 1, 3.  The transaction was to occur between 8:00 and 9:00 p.m. on October 1, 2013 in the Home Depot parking lot at 969 Central Avenue, Albany, New York.  *Id.* ¶ 5.  After members of the Albany Police Department's Community Response Unit ("CRU") witnessed what they believed to be the pre-arranged drug transaction,[16] two black CRU police vehicles approached plaintiff with their headlights off.  *Id.* ¶ 7.  Detectives told plaintiff he was under arrest, but plaintiff fled on foot through the parking lot.  *Id.* ¶¶ 7-8.  Several detectives pursued plaintiff on foot.  *Id.* ¶ 8.  As plaintiff was fleeing, Detective Gavigan deployed a department issued Taser.  *Id.* ¶ 9.   One probe struck Dorsey, but it was ineffective and Dorsey continued to run.  *Id.*   As the foot pursuit continued, Detective Plante positioned one of the black CRU vehicles in plaintiff's path in an attempt to slow his forward progress.  *Id.*   After Detective Plante brought the police vehicle to a stop, and while plaintiff was

---

[16]The arranged meeting was purportedly for plaintiff to sell the confidential informant 5 bundles of heroin, *see* Def. Ex. E, but, as plaintiff asserts in the complaint, the transaction involved plaintiff's purchase of marijuana.

12

looking backwards at the detectives chasing him, plaintiff ran into the passenger side of the vehicle. *Id.* ¶ 11. Plaintiff fell backwards and to the ground. *Id.* ¶ 13.

Defendants allege that a struggle then ensued to subdue and handcuff plaintiff. *Id.* During this incident, Detective Regan sustained a fractured and dislocated ring finger on his right hand. *Id.* [17] Plaintiff alleges that Detective Regan struck him several times. Plaintiff also testified that he was "punched and kicked multiple times and [Det. Ruecker] was the one standing over me, I assume he assaulted me as well." Pl. Dep. *Id.*, p. 37. Because plaintiff was face down on the ground when this occurred, however, he did not actually see Detective Ruecker strike him or come into physical contact with him. *Id.*, pp. 38-39. Nevertheless, plaintiff cites Det. Regan's criminal trial testimony to raise a question of fact whether Det. Ruecker employed physical force during the arrest. In this regard, Det. Regan testified:

> [Plaintiff] was trying to get up. He was not producing his hands. We were like, "stop resisting, stop resisting," and he wouldn't produce his hands. He kept like, you know – we were - certain guys were punching him, certain guys were kneeing him. One guy, I believe, maybe put his leg like in a lock so he couldn't get up, but there was a struggle for probably anywhere between 30 and 60 seconds to get him in custody.

Regan Test. p. 26, Plt. Ex. E.

### b. Defendants' Legal Arguments

#### 1. Excessive Force Claim Against Det. Ruecker

Defendants move to dismiss the excessive force claim against Det. Ruecker on the ground that plaintiff "is unable to establish any use of force whatsoever on the part of said

---

[17]There is a dispute whether Det. Regan suffered the fractured and dislocated ring finger on his right hand when plaintiff rebounded back after running into the police CRU vehicle, or during the struggle to handcuff plaintiff. Nonetheless, it is undisputed that plaintiff was charged with, and found guilty by jury of, Assault in the Second Degree for assaulting Detective Regan during the course of his October 1, 2013 arrest.

13

Defendant." Def. Mem. L. pp. 3-4. This aspect of the motion is denied.

While plaintiff testified that he did not see Det. Ruecker strike him, he also testified that Ruecker was standing above him while he was face-down on the ground being repeatedly punched and kicked. Combined with Det. Regan's testimony that, during the struggle, "certain guys were punching him, certain guys were kneeing him," a reasonable fact finder could conclude that Ruecker was one of these "guys," and that his use of force was excessive under the Fourth Amendment. *See Hattar v. Carelli*, 2012 WL 246668, at *3 (S.D.N.Y. Jan. 11, 2012).[18]

Further, it is possible that a jury could find Det. Ruecker liable under a "failure too intervene" theory. That is, it is possible that a jury could find that Det. Regan's use of force was excessive and that Det. Ruecker, in a position to stop that use of excessive force, failed to do so. *See Burks v. Perrotta*, Slip Copy, 2015 WL 2340641, at *7 (S.D.N.Y. May 15, 2015).[19]

### 2. Excessive Force by Use of Police Vehicle

Defendants also move to dismiss any claim of excessive force arising out of the use of the black CRU police vehicle October 1, 2013. They argue that "[p]laintiff has failed to allege, and further failed to prove, that either Defendant, Detective John Regan or Detective Ruecker, owned or operated the black CRU police vehicle that came in contact with Plaintiffs body on the night of October 1, 2013." Def. Mem. L., p. 3.

---

[18] (denying summary judgment despite the fact that the plaintiffs could not identify any specific individual officer who used excessive force)

[19] ("Furthermore, the Court notes that '[i]t is widely recognized that all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence.' Thus, even if Egan did not place his hands on Plaintiff, he may yet be liable for having failed to intervene.") (quoting *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir.1994))

14

Inasmuch as there is no dispute that the police vehicle was operated by Detective Plante, a non-party to this lawsuit, and inasmuch as there is no evidence indicating that Detectives Regan or Ruecker directed, caused, or had the ability to stop Detective Plante's actions relative to the use and maneuvering of the black CRU police vehicle on October 1, 2013, summary judgment on this ground is granted. Any excessive force claim against Detectives Regan or Ruecker arising from the use of the black CRU police vehicle on October 1, 2013 is dismissed. [20]

### 3. Compensatory Damages

Defendants move to bar plaintiff from introducing any evidence of compensatory damages. They argue that plaintiff "has not made a request for monetary damages at any stage during the course of the instant litigation," and note that discovery is now closed. Def. Mem. L. p. 4.

As indicated above, a liberal reading of the complaint and plaintiff's proposed Civil Case Management Plan indicates that plaintiff brings the action, *inter alia*, to recover for monetary compensation for injuries sustained from defendants' alleged use of excessive force. Whether defendants sought discovery on these issues does not preclude plaintiff from seeking this recovery at trial. Accordingly, defendants' motion in this regard is denied.

### 4. Miscellaneous Relief

Defendants move to dismiss that much of the complaint seeking to have defendants charged with attempted vehicular manslaughter, assault, and assault with a deadly weapon;

---

[20]Defendants asserted in opposition to plaintiff's motion that Detective Gavigan, an unnamed third party, deployed the Taser that struck plaintiff. However, defendants offer no further argument with regard to whether either defendant could be held liable for Detective Gavigan's conduct. Absent such argument, the Court refrains from ruling on this issue.

15

an order of protection against Albany Police Department personnel; and dismissal of plaintiff's state criminal convictions. Defendants argue that such requests are not properly before this Court. The Court agrees. Through these requests, plaintiff improperly asks this Court to assume a prosecutorial function and impose criminal charges against Defendants; to assume an appellate court function and overturn his state criminal convictions; and to assume a function more providently delegated to a village, town, county or family court and grant an Order of Protection. This court is not the proper venue to bestow upon plaintiff this requested relief. Accordingly, defendants' motion in this regard is granted, and this requested relief is dismissed.

## V. CONCLUSION

For the reasons discussed above, plaintiff's motion for summary judgment, dkt. # 56, is **DENIED**. Plaintiff's claims that defendants used excessive force on October 1, 2013, or failed to intervene to stop the use of excessive force by another officer, will be litigated to a jury consistent with the rulings set forth above. Plaintiff is entitled to seek compensatory and punitive damages, both of which must be decided by the jury. Any claim against the City of Albany is **dismissed without prejudice** to being brought in a separate action.

Defendants' motion for summary judgment, dkt. # 57, is **GRANTED IN PART and DENIED IN PART**. The motion is **granted inasmuch as**:

(a) any excessive force/failure to intervene claim against defendants Regan or Ruecker premised on Detective Plante's use of a black CRU police vehicle on October 1, 2013 is **DISMISSED**;

and

(b) that much of the complaint seeking (a) to have defendants charged with attempted vehicular manslaughter, assault, and assault with a deadly weapon; (b) an

16

order of protection issued against Albany Police Department personnel; and (c) dismissal of plaintiff's state criminal charges is **DISMISSED**.

The motion is **denied in all other respects**.

**IT IS SO ORDERED**.

Date:June 2, 2015

Thomas J. McAvoy
Senior, U.S. District Judge